IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNYSLVANIA

| | |
|---|---|
| GEORGE W. JACOBY, ESQUIRE as EXECUTOR of the ESTATE OF PATRICIA WATTS, Deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>ALLEGHENY COUNTY, as owner and operator of JOHN J. KANE REGIONAL CENTER-SC d/b/a KANE SCOTT CENTER, a skilled nursing facility,<br><br>    Defendant. | Civil Action No. 2:21-cv-173 |

## PLAINTIFF'S COMPLAINT

AND NOW, comes the Plaintiff, George W. Jacoby, Esquire, as Executor of the Estate of Patricia Watts, Deceased, by and through his counsel, Robert F. Daley, Esquire; Katelyn D. Edwards, Esquire, and the law firm of Robert Peirce & Associates, P.C, and files this Complaint for the Defendant's violations of duties imposed upon them under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1396r, *et seq.*, and the implementing regulations found at 42 C.F.R. § 483, *et seq,* and for violations of the Constitution of the United States of America under Amendment 14, enforceable under 42 U.S.C. § 1983, against the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center-SC d/b/a Kane Scott Center, a skilled nursing facility.

1

## NATURE OF THE ACTION

1. This proceeding under 42 U.S.C. § 1983 to remedy deprivation of rights guaranteed by the Omnibus Budget Reconciliation Act of 1987, the Federal Nursing Home Reform Act; and the Federal Nursing Home Regulations, as found at 42 C.F.R. § 483, and the Constitution of the United States of America.

## JURISDICTION AND VENUE

2. As the instant case presents issues of federal law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C. § 1331.

3. Venue lies within the judicial district, since all of the actions complained of herein occurred within the Western District of Pennsylvania.

## PARTIES

4. Plaintiff George W. Jacoby, Esquire is an adult individual with a business mailing address of 564 Forbes Avenue, Suite 1608, Pittsburgh, PA 15219.

5. Plaintiff Jacoby was appointed Executor of the Estate of Patricia Watts on February 2, 2021.

6. Defendant Allegheny County, Pennsylvania, is a governmental agency with its government offices located at 436 Grant Street, Pittsburgh, Allegheny County, Pennsylvania, Pennsylvania 15219.

7. John J. Kane Regional Center-SC d/b/a Kane Scott Center, is a skilled nursing facility with its principal place of business located at 300 Kane Boulevard, Pittsburgh, Allegheny County, Pennsylvania, 15243.

8. Defendant Allegheny County owns and operates John J. Kane Regional Center-SC d/b/a Kane Scott Center.

9. As such, at all times relevant hereto, John J. Kane Regional Center-SC d/b/a Kane Scott Center is a governmental agency acting under the color of state law.

10. At all times relevant hereto, John J. Kane Regional Center-SC d/b/a Kane Scott Center operated as a "long term care nursing facility" as that term is defined in 35 P.S. §448.802A.

11. Accordingly, John J. Kane Regional Center-SC d/b/a Kane Scott Center is a "licensed professional" as that term is defined in 40 P.S. § 1303.503.

12. At all times relevant hereto, John J. Kane Regional Center-SC d/b/a Kane Scott Center operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

13. At the time of the incidents pled herein, John J. Kane Regional Center-SC d/b/a Kane Scott Center was acting under the control of Allegheny County, and was acting by and through its authorized agents, servants and employees then and there acting within the course and scope of their employment.

14. Defendant Allegheny County is a county government organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Allegheny County, acting through John J. Kane Regional Center-SC d/b/a Kane Scott Center was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the John J. Kane Regional Center-SC d/b/a Kane Scott Center facility and was responsible for the appointment, training, supervision and conduct of all John J. Kane Regional Center-SC d/b/a Kane Scott Center personnel. In addition, at all relevant times, Defendant Allegheny County was responsible for enforcing the rules of the John J. Kane Regional Center-SC d/b/a Kane Scott Center

facility and for ensuring that personnel employed in the facility obey the Constitution and laws of the United States and of the Commonwealth of Pennsylvania.

15. Hereinafter, Allegheny County and John J. Kane Regional Center-SC d/b/a Kane Scott Center will collectively be referred to as "Kane."

## STATEMENT OF CLAIMS

16. The facts relevant to the cause of action stated herein were known, or in the exercise of due diligence, should have been known to the Defendant upon the development of the Plaintiff's Decedent's injuries.

17. At all times relevant hereto, Kane operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. § 1395i-3.

18. At all times relevant hereto, Kane was acting independently and by and through its authorized agents, servants, and employees then and there acting within the course and scope of their employment.

19. At no time during Ms. Watts' life did she bring an action to recover damages for her personal injuries.

20. Ms. Watts was admitted to Kane on March 29, 2017 for management of her chronic kidney disease, morbid obesity, and her history of congenital cognitive disability.

21. According to Ms. Watts' admission records, she required a Hoyer lift and the assistance of two (2) Kane staff members for all transfers.

22. A Care Plan dated April 2, 2018 confirmed that Ms. Watts required a Hoyer lift and the assistance of two (2) Kane staff members for transfers due to her immobility issues.

23. Prior to February 2019, Ms. Watts life at Kane was relatively uneventful and a Hoyer lift was used daily for all transfers without issue.

24. February 2019 Activity of Daily Living (ADL) Log Sheets indicates that Ms. Watts needed the assistance of two (2) Kane staff members and a Hoyer for transfers.

25. On February 5, 2019, a physician order again indicated that Ms. Watts required the use of a Hoyer for transfers and the assistance of two (2) Kane staff members.

26. However, on February 10, 2019, one (1) Kane staff member attempted to transfer Ms. Watts using a Hoyer lift.

27. Unsurprisingly, the Hoyer lift tipped over, sending Ms. Watts to the floor with such speed and force as to cause her instant pain.

28. Ms. Watts fell and struck her left side on the floor and immediately began to complain of left knee and ankle pain.

29. Ms. Watts was taken to St. Clair Hospital, and x-ray imaging confirmed she had sustained a left leg tibia fracture as a result of the fall.

30. Ms. Watts was deemed a non-surgical candidate and was affixed with a left knee immobilizer.

31. Four (4) days later, Ms. Watts was discharged from St. Clair Hospital and readmitted to Kane.

32. Following her readmission to Kane, Ms. Watts required the assistance of three (3) Kane staff members to transfer her using the Hoyer lift.

33. Facility records indicate that following Ms. Watts readmission to Kane, she often voiced fear when staff members used the Hoyer lift.

34. On February 20, 2019, occupational therapy noted that Ms. Watts actually refused to use the Hoyer lift and voiced fear of falling again.

35. Ms. Watts required several months of extensive physical therapy and occupational therapy services.

36. Physician's orders revealed that following her leg fracture, Ms. Watts required oxycodone for pain management, which she never required before her fall.

37. Ms. Watts required twenty-one (21) doses of oxycodone from February 14, 2019 through February 27, 2019.

38. Kane's own investigation of the fall revealed that the employee in question failed to follow the physician order to have two (2) staff persons present during the transfer with a mechanical lift.

39. Following the fall, Kane self-reported this incident to the Pennsylvania Department of Health.

40. Kane's incident report, cited by the Pennsylvania Department of Health, noted that a nursing assistant attempted a transfer of Ms. Watts by herself using the Hoyer, and that the Hoyer lift tipped, sending Ms. Watts to the floor.

41. The Department of Health noted, per her statement, that the employee in question knew that she needed the assistance of another person to transfer Ms. Watts but still attempted the transfer herself.

42. The employee noted "I know I should have waited".

43. On February 27, 2019, Ms. Watts explained to the Department of Health investigator that, following her fall, she had to take a new medication (oxycodone) for her pain,

that she had to keep her leg straight at all times in her immobilizer, and that she was afraid of being transferred in the Hoyer lift.

44. On February 27, 2019, the Director of Nursing at Kane confirmed to the Department of Health that the facility failed to ensure that Ms. Watts was kept free from neglect during a transfer from her bed which resulted in actual harm (a fractured tibia).

45. The Department of Health cited Kane for various violations of state regulations, including those pertaining to: responsibility of licensee (28 Pa. Code 201.14(a)), management (28 Pa. Code 201.18(b)(1)(3)(e)(1)), resident rights (28 Pa. Code 201.29(d)), resident care policies (28 Pa. Code 211.10(c)(d)), resident care plans (28 Pa. Code 211.11(d)), and nursing services (28 Pa. Code 211.12(d)(1)(3)(5)).

46. On October 11, 2020, Ms. Watts died from complications of Covid-19 and coronary artery disease.

## COUNT I
## Deprivation of Civil Rights Enforceable Via 42 U.S.C. §1983
### NEGLIGENCE

47. All of the preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

48. Defendant is an agent of the Commonwealth of Pennsylvania, and at all times relevant to this Complaint was acting under the color of state law.

49. Defendant is bound generally by the Omnibus Budget Reconciliation Act of 1987 ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA") which was contained within

the Omnibus Reconciliation Act of 1987. See 42 U.S.C. § 1396r, 42 U.S.C. § 1396(a)(w), as incorporated by 42 U.S.C. § 1396r.

50. Defendant is also bound generally by OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which serve to define specific statutory rights set forth in the above-mentioned statutes.

51. The specific detailed regulatory provisions, as well as the statutes in question, create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

52. The Defendant, in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the aforementioned regulations, as follows:

    a. By failing, as a custom and policy, to care for patients, including Ms. Watts, in a manner that promoted maintenance or enhancement of her life, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(1)(A);

    b. By failing, as a custom and policy, to promote the care of residents, including Ms. Watts, in a manner and in an environment that maintained or enhanced her dignity, as required by C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(1)(A);

    c. By failing, as a custom and policy, to provide residents, including Ms. Watts, the necessary care and services to allow her to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(3)(A);

    d. By failing, as a custom and policy, to provide residents, including Ms. Watts, the necessary care and services to preclude them from experiencing a reduction in range of motion and/or providing appropriate treatment and services to increase range of motion, as required by 42 C.F.R. § 483.25(c) and 42 U.S.C. § 1396r(b)(3)(A);

e. By failing, as a custom and policy, to provide residents, including Ms. Watts proper supervision and assistance devices to prevent accidents, as required by 42 C.F.R. § 483.25(d) and 42 U.S.C. § 1396r(b)(3)(A);

f. By failing, as a custom and policy, to ensure that patients or residents, including Ms. Watts, were provided medically related social services to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(4)(A)(ii);

g. By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

h. By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Ms. Watts, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396r(b)(4)(C);

i. By failing, as a custom and policy, to ensure that Kane was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Ms. Watts, to attain or maintain their highest practicable level of physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.70, 42 U.S.C. § 1396r(d)(A) and 42 U.S.C. § 1396r(d)(1)(A) and 42 U.S.C. § 1396r(d)(1)(C);

j. By failing, as a custom and policy, to ensure that the executor of Kane met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

9

k. By failing, as a custom and policy, to ensure that Kane was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including Ms. Watts, and in operating such a facility as Kane, as required by 42 U.S.C. § 1396r(d)(4)(A); and,

l. By failing, as a custom and policy, to ensure that Kane's executor and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Ms. Watts, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(b)(B).

53. In particular, and as further evidence that the Kane's failures were systemic and part of a custom and policy, Kane was cited numerous times between July 20, 2017 and February 27, 2019 for regulatory violations directly relevant to the allegations in Plaintiff's Complaint, including violations of regulations to keep residents free from abuse and neglect, providing care to care-dependent people, and keeping residents' environments free from accidents and hazards.

54. The aforementioned violations indicate that Kane, as a policy and/or custom, was deliberately indifferent to Ms. Watts' needs, and as such, and in conjunction with other conduct described herein, deprived her of federally guaranteed and protected rights.

55. The systemic failures of Kane as cited by the Department of Health, combined with the failures identified in Paragraphs 52(a)-(1) demonstrate that Kane, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Kane failed to implement and follow appropriate customs and policies and/or, in the alternative, that Kane had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

56. As a proximate result of Defendant Kane's actionable derogation of its regulatory and statutory responsibilities as above-described, Patricia Watts was injured as previously referenced and suffered pain and distress as a result of the poor care and treatment which allowed her to suffer harm, as described herein.

57. As such, Patricia Watts suffered, and her Estate is now entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. 1983 and 42 U.S.C. § 1988:

    a. Money expended for hospital, medical, surgical, and nursing expenses incident to the treatment of Patricia Watts;

    b. Pain, suffering, embarrassment, humiliation, inconvenience, anxiety, loss of enjoyment of life and nervousness Patricia Watts; and,

    c. Other losses and damages permitted by law.

WHEREFORE, the Plaintiff, George W. Jacoby, Esquire, Executor of the Estate of Patricia Watts, Deceased, demands compensatory damages from the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center-SC d/b/a Kane Scott Center, a skilled nursing facility, in an amount in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

A JURY TRIAL IS DEMANDED.

                                                Respectfully submitted,

                                                */s/ Katelyn D. Edwards*
                                                KATELYN D. EDWARDS, ESQUIRE
                                                PA I.D. No.: 319093
                                                ROBERT PEIRCE & ASSOCIATES, P.C.
                                                707 Grant Street
                                                Suite 125

Pittsburgh, PA 15219
Tel: 412-281-7229
Fax: 412-281-4229
Email: kedwards@peircelaw.com
Counsel for Plaintiff